Abdias Lawrence MACIAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–01197–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 23, 1997.

Rehearing Overruled Jan. 29, 1998.

Winston E. Cochran, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before HUDSON, J., SEARS and DRAUGHN *, JJ.

## OPINION

DRAUGHN, Justice.

Appellant entered a plea of not guilty to the offense of capital murder. TEX. PENAL CODE ANN. § 19.03 (Vernon 1989).[1] A jury found him guilty and assessed punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In seven points of error, appellant contends the trial court erred (1) by depriving him of an adequate record on appeal; (2) in denying a requested jury instruction on the lesserincluded offense of murder; (3) by failing to define the phrase "in the course of committing" an offense in the jury charge; (4) in admitting evidence of appellant's affiliation with a gang; (5) in admitting gruesome photographs; and (6) in permitting the State to argue a plea for law enforcement during final arguments. We reverse and remand.

Around 3:30 a.m. on the morning of July 4, 1993, complainant, Raymundo Miranda, walked past the home of Edward Cantu where appellant, Cantu, Roger Vidales, Jesse Montoya and Miguel Mendez were outside drinking. Upon seeing complainant, appellant announced that he wanted to "roll" or rob complainant and struck complainant over the head with a fan. Cantu yelled at appellant and questioned why he struck complainant, but appellant just laughed. Cantu apologized to complainant and invited him to join the party. Complainant accepted the invitation and shared his bottle of tequila with the men.

Around 8:30 a.m., appellant, complainant, Vidales, Montoya and Mendez left Cantu's house in Montoya's car. When the men first got into the car, Vidales expressed his desire to hit complainant with a pipe wrench, but Mendez took the wrench away from him. Montoya then drove to a bridge over Buffalo Bayou where he stopped his car. Appellant and Vidales got out of the car. Appellant said "let's roll him" and began to go through complainant's pockets. He found only a pack of cigarettes. Vidales then pulled complainant from the car onto the concrete and he and appellant kicked complainant repeatedly. Mendez remained in the car. Although Montoya initially remained in the car, he joined Vidales and appellant in kicking complainant after Vidales and appellant taunted and teased him for not participating in the foray. Appellant, Vidales, and Montoya then rolled complainant off the bridge.

---

* Justices Sears and Draughn sitting by assignment.

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73 rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

Appellant, Vidales, Montoya, and Mendez returned to Cantu's house where appellant told Cantu that they had hit complainant and thrown him over a bridge. The men warned Mendez to not say anything about the incident. Several days later at another party, appellant and Vidales bragged to Leon Cantu, Edward's cousin, about throwing an illegal alien over a bridge. Leon reported the incident to the police. Complainant's skeletal remains were found January 27, 1994 under a bridge.

■ In his first point of error and in a separate motion, appellant urges this court to abate the appeal because two notes sent by the jury and the trial court's written response are missing from the record. When the record or a portion of the record is lost or destroyed, the parties may substitute it in the trial court, and the substitution transmitted to the appellate court as in other cases. TEX.R.APP. P. 50(e). "If the appellant has made a timely request for a statement of facts, but the court reporter's notes and record have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts." *Id.*

The parties agreed on the content of the note at the conclusion of a hearing ordered by this court. The trial court concluded and the parties agreed that the jury sent one note with two questions to the trial court during deliberations, but the note and the trial court's response were lost or destroyed and substitutes could not be made. The parties also agreed that in one question the jury requested the medical examiner's photographs, which the court had admitted over appellant's objection. The trial court sent the photographs to the jury the next morning. The parties further agreed in the second question the jury inquired whether they could convict appellant of any offense other than capital murder. In response, the trial court referred the jury to the court's charge and informed them that they were bound by the charge. The trial court reduced its answer to writing and gave it to the bailiff for delivery the next morning.

Because the parties agree on the content of the jury's questions and the trial court's

response, appellant's first point of error is moot. Therefore, we overrule appellant's first point of error.

■ In his second point of error, appellant contends the trial court erred in denying a requested instruction on the lesser-included offense of murder. A trial court must submit a charge on a lesser-included offense if (1) the lesser-included offense is within the proof necessary to establish the offense charged; and (2) some evidence exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993) (clarifying *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App.1981) (opinion on reh'g) (plurality opinion)). The first prong of the test is easily met; murder is a lesser-included offense of capital murder. *Robertson v. State,* 871 S.W.2d 701, 706 (Tex. Crim.App.1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). The dispositive issue, then, is whether some evidence exists in the record that would permit a jury to find the defendant guilty only of the lesser offense. In determining whether the record contains evidence that the defendant is guilty only of the lesser offense, we examine the entire record. *Rousseau,* 855 S.W.2d at 673.

The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App. 1992). Therefore, if the record reflects some evidence that refutes or negates the aggravating element of the greater offense or if the evidence is subject to different interpretations, the trial court must submit a lesser-included charge to the jury. *Saunders,* 840 S.W.2d at 391–92. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim. App.1994).

For a rational jury to find appellant guilty only of murder, the record must reflect some

evidence that appellant did not kill complainant in the course of committing or attempting to commit a robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1989). Appellant contends the following evidence raises reasonable doubt as to whether he was in the course of robbing complainant: (1) appellant made no statement to Cantu about taking any property although he admitted a gruesome killing; and (2) police officers found complainant's wallet in his pants along with his skeletal remains. Appellant contends this evidence undermines Mendez's testimony about appellant searching complainant's pockets and discovering only a package of cigarettes because a rational jury would not likely believe an assailant intent on robbing someone would take a pack of cigarettes but not a wallet out of the victim's pocket.

"It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the fact finder to consider before an instruction on a lesser-included offense is warranted." *Cantu v. State*, 939 S.W.2d 627, 646 (Tex.Crim.App.1997), *cert. denied*, ─ U.S. ─, 118 S.Ct. 557, 139 L.Ed.2d 399, 66 USLW 3385 (1997). Here, appellant's evidence neither negates nor refutes other evidence that he murdered complainant while in the course of committing or attempting to commit robbery. Appellant's failure to mention the robbery to Cantu does not negate or refute evidence that a robbery or attempted robbery occurred. Likewise, his claim that complainant's wallet casts doubt as to whether appellant searched complainant's pockets does not negate the commission of a robbery or attempted robbery. The trial court did not err in denying appellant's request for a charge on the lesser-included offense of murder. We overrule appellant's second point of error.

■■■ In his third point of error, appellant contends the trial court erred by failing to instruct the jury on the meaning of the phrase "in the course of committing." In his argument before the court, appellant maintained the definition of the phrase "in the course of committing" was necessary for a proper resolution of the case because the evidence reflected two incidents in which appellant allegedly stated an intent to rob complainant.[2] Appellant argued without the definition, the jury might have confused which incident related to the murder. In reviewing a jury charge for alleged error, an appellate court must examine the charge as a whole and not as a series of isolated and unrelated statements. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

■■■ A trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury. *City of San Antonio v. Dunn*, 796 S.W.2d 258, 263 (Tex.App.—San Antonio 1990, writ denied). Proper instructions are those which help the jury in answering the questions and which find support in the evidence and inferences to be drawn from the evidence. *Id.* Nevertheless, the trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues, and provide the statutory definition if available. *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex.App.—Houston [1st Dist.] 1991, pet ref'd). *See also Arline v. State*, 721 S.W.2d 348, 352 n. 4 (Tex.Crim. App.1986) (stating "a statutorily defined word or phrase must be included in the charge as part of the 'law applicable to the case' ").

The phrase "in the course of committing" is not statutorily defined, although the phrase "in the course of committing theft" is defined in Section 29.01 of the Texas Penal Code. Drawing on the definition from Section 29.01, the court of criminal appeals defined the phrase "in the course of committing" under Section 19.03 as "conduct occurring in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the offense, i.e., in this case, of robbery." *Riles v. State*, 595 S.W.2d 858, 862 (Tex.Crim.App.1980). Although statutorily defined, the court of criminal appeals

---

**2.** Mendez testified appellant first stated he wanted to rob complainant at Cantu's house shortly before appellant hit complainant with a fan.

Mendez further attested that appellant announced the same intent before searching complainant's pockets and killing him.

held that the omission of the phrase "in the course of committing theft" from the jury charge was not reversible error. *Olveda v. State*, 650 S.W.2d 408, 409 (Tex.Crim.App. 1983). The court reasoned as follows:

[W]hen the statutory definition is not included in the charge, it is assumed the jury would consider the commonly understood meaning in its deliberations. Although error would result where the common meaning is more expansive than the statutory definition, such is not the case with the phrase 'in the course of committing theft.' Any possible misunderstanding of the phrase would have been more restrictive than the statutory definition, and could only have been to appellant's benefit.

*Id.* We hold the same reasoning applies to the common-law definition of "in the course of committing" robbery. Furthermore, the "failure to give an abstract instruction is reversible only when such an instruction is necessary to correct or complete understanding of concepts or terms in the application part of the charge." *Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App.1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (1997).

Here, the trial court provided the statutory elements of capital murder, robbery, and aggravated robbery in the abstract portion of the charge. In the same section the trial court defined theft, deadly weapon, the culpable mental states related to murder, and stated the law of the parties. In the application paragraph, the trial court provided the following:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 4th day of July, 1993, in Harris County, Texas, the defendant, Abdias Lawrence Macias, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Raymundo Miranda, intentionally cause the death of Raymundo Miranda by striking Raymundo Miranda with his foot or by pushing Raymundo Miranda from a bridge to the ground, ... then you will find the defendant guilty of capital murder as charged in the indictment.

Because the application paragraph clearly directs the jury to the alleged robbery on the bridge, the jury could not have confused the two incidents in resolving the issue before them. Even if the omission of the definition was error, the error was not so harmful as to deny appellant a fair and impartial trial. *See Arline*, 721 S.W.2d at 351. Therefore, the trial court did not abuse its discretion in omitting the *Riles* definition of "in the course of committing robbery" from the jury charge. Appellant's third point of error is overruled.

■ In his fifth and sixth points of error, appellant maintains the trial court erred in admitting over his objection numerous photographs of complainant's skeletal remains and clothing. Specifically, appellant complains of two groups of photographs, State's exhibits 11 through 15 and State's exhibits 16 through 19. State's exhibits 11, 12, and 15 are photographs of complainant's skull and teeth. State's exhibits 13 and 14 are photographs of complainant's clothing found on and around his skeletal remains. State's exhibits 16 through 19 are photographs of complainant's skeletal remains. Appellant argues these photographs (1) were not probative of the State's case on any issue and (2) were extremely prejudicial. The State contends the photographs were not particularly gruesome and probative of complainant's identity and his cause of death.

■ Photographs are generally admissible where verbal testimony about the same matter is admissible. *Emery v. State*, 881 S.W.2d 702, 710 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). A trial court, however, may exclude relevant photographic evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.CRIM. EVID. 403; *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex.Crim.App.1995); *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim. App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). A trial court may consider several factors in determining whether the probative value of the photographs is substantially outweighed by

the danger of unfair prejudice to the defendant including (1) the number of exhibits offered; (2) their gruesomeness; (3) their detail; (4) their size; (5) whether they are black and white or color; (6) whether they are close-up; (7) whether the body is naked or clothed; and (8) the availability of other means of proof and the circumstances unique to each individual case. *Emery,* 881 S.W.2d at 710. Ultimately, the admissibility of photographs over any challenge is within the sound discretion of the trial judge. *Sonnier,* 913 S.W.2d at 518.

In this case, the State offered nineteen color photographs of complainant's skeletal remains and clothing found at the scene.[3] The photographs are not large in size. Some photographs, particularly those of complainant's teeth, were taken at a relatively close distance but none display great detail. None are particularly "so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing them." *Fuller v. State,* 829 S.W.2d 191, 206 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

Plainly State's exhibits 11 though 15 were relevant to the State's case at the guilt-innocence phase because they helped to prove complainant's identity. Likewise, State's exhibits 16 through 19 were relevant to establish the cause of death. Moreover, the photographs added to the probative value of the State's case by supporting the testimony of complainant's brother and the county medical examiner. Complainant's brother identified complainant based upon the evidence depicted in State's exhibits 11 through 15, namely, the gold teeth, boots, and identification card recovered from the scene. An assistant medical examiner reported the autopsy findings, which reflected evidence of trauma over the chest, lumbar area, abdominal and thoracic areas as well as several fractures in the ribs, spine, and shoulder blade depicted in State's exhibits 16 though 19. He also found evidence of hemorrhage, which occurred prior to complainant's death.

Based on his study of the bones alone, the examiner testified that complainant died as a result of blunt trauma to the chest and abdominal areas, a death consistent with being thrown off a bridge of forty to fifty feet and falling onto concrete rubble.

The trial court did not abuse its discretion in admitting the photographs over appellant's objection. Points of error five and six are overruled.

In his seventh point of error, appellant contends the trial court erred in permitting the prosecutor to argue a plea for law enforcement at the guilt-innocence stage of trial. Appellant specifically complains of the following argument:

> PROSECUTOR: I submit to you, ladies and gentlemen, the days of lawlessness in Houston must come to an end. You must tell these people that we're not going to tolerate it. Surely look at the people. You're going to know the results of your decision is going to be heard in that community. All the other characters out there that want to be gang members and do whatever gang members do—
>
> DEFENSE ATTORNEY: I object. That's improper form of argument to the jury.

The trial court overruled the objection. The prosecutor then continued discussing gang membership.

 Appellant's trial objection, however, does not comport with his complaint on appeal. An objection stating one legal theory may not be used to support a different legal theory on appeal. *Camacho v. State,* 864 S.W.2d 524, 533 (Tex.Crim.App.1993) (citing *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990)), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). Moreover, a plea for law enforcement is one of the four permissible areas of jury argument. *Lagrone v. State,* 942 S.W.2d 602, 619 (Tex.Crim.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 305, 139 L.Ed.2d 235(1997). Appellant's seventh point of error is overruled.

---

**3.** The parties agree the photographs admitted at trial were in color. The appellate record, however, contains black and white copies of the photographs.

■ In his fourth point of error, appellant contends trial court erred in admitting testimony that appellant was affiliated with a gang. Appellant contends the trial court violated Rule 404 of the rules of criminal evidence, which provides with some exceptions, that evidence of other crimes, wrong and bad acts is not admissible during the guilt-innocence stage of the trial. Tex.R.Crim. Evid. 404(b). Like any evidence, Rule 404 evidence must be relevant to be admissible. Rule 402. Therefore, we must first determine if the gang evidence is relevant under Rule 401.

■ The State contends evidence of appellant's gang membership is relevant as same transaction contextual evidence. Same transaction evidence is evidence "where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony ... of any one of them cannot be given without showing the others." *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim.App.1995). Same transaction contextual evidence is an exception to Rule 404(b) where such evidence is necessary to the jury's understanding of the offense. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). The State argues appellant's gang affiliation was necessary to the jury's understanding of the murder in that all but one of the men involved in the murder were gang members.

■ "[A] jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacumn." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim.App.1986). Nevertheless, same transaction evidence "is admissible only 'when the offense would make little or no sense without also bringing in the same transaction evidence.'" *Pondexter v. State*, 942 S.W.2d 577, 583–85 (Tex.Crim.App. 1996) (quoting *England v. State*, 887 S.W.2d 902, 915 (Tex.Crim.App.1994)), *cert. denied*, — U.S. ——, 118 S.Ct. 85, 139 L.Ed.2d 42(1997). After examining all of the facts surrounding the murder in this case, we find the evidence of appellant's gang affiliation had no tendency to make more probable the existence of any fact or consequence. In other words, the evidence of appellant's gang membership is not relevant under Rule 401. Even if the evidence were relevant, it is still not admissible as same transaction contextual evidence. Under the facts of this case, appellant's gang membership was an incidental aspect of appellant's life. Appellant's gang affiliation was not part of the reason for the murder or part of the explanation for why the murder occurred as it did. Undoubtedly, the State could have presented a clear and understandable case explaining the robbery and murder without interjecting the unnecessary information about appellant's gang affiliation. Because the testimony about appellant's gang affiliation was not necessary to the jury's understanding of the capital murder, it was not admissible as an exception under Rule 404(b). The trial court erred in admitting this evidence.

■ A finding of error mandates reversal, "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Tex.R.App. P. 81(b)(2); *Pondexter*, 942 S.W.2d at 584. In determining whether error is harmless, we are not to focus on the propriety of the outcome of the case, but instead are to be concerned with the integrity of the process leading to the conviction. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). First, the reviewing court must isolate the error and all of its effects. Second, the court must ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* at 588. Factors the court should consider include (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587. If the error is of a magnitude that it disrupted the jury's orderly evaluation of the evidence, no matter how overwhelming the evidence might have been, the conviction is tainted. *Id.* at 588. In applying this standard of review, we do not look for over-

whelming evidence of guilt, but we focus on the error and its possible impact. *Wilson v. State*, 938 S.W.2d 57, 61 (Tex.Crim.App. 1996).

In this case, the State was the source of the error by introducing irrelevant evidence of character conformity. Unlike *Pondexter*, the State emphasized appellant's gang affiliation in its direct examination and in opening and closing arguments. Over objection, the State elicited from Mendez that some of the persons, including appellant, were members of the Brown and Proud Gang and that Cantu was the leader and disciplinarian of the gang on the north side of Houston. The State also elicited testimony from Cantu about his role as gang leader and appellant's gang affiliation. Over objection, the prosecutor made inflammatory remarks in closing arguments such as "[c]ouldn't be a member of a gang that attacks people like a gang of wolves" and "[y]ou have to tell people in the streets that want to get involved in these big groups like them and call themselves cool guys and we're going to get united and beat and stomp and rob and rape and anything we want to." He further argued as follows without objection:

> And listen, ladies and gentlemen. Listen to the evidence. This is a gang. Part of it is on the north side of Houston and another part of it is in Pasadena, Texas. This thing is organized so to where you have, I guess division leaders or captains and they are responsible for these people. It's a very large group of violent, dangerous people.

The collateral implication of the State's evidence and argument is that appellant is a criminal because he belongs to the Brown and Proud Gang. Considering the emphasis the State placed on appellant's gang affiliation, the State would most likely repeat the error with impunity if we were to find it harmless.

In deciding how much weight the jury may have given this testimony, we examine the other evidence introduced at trial. *Pondexter*, 942 S.W.2d at 584. Mendez testified he actually saw the robbery and the murder, and observed appellant and Vidales confess to Cantu that they had thrown complainant over the bridge. Cantu, and Leon Cantu also testified that appellant confessed he had thrown complainant over the bridge.

Taking all this information as a whole, we find five of the six *Harris* factors militate toward a finding of harm in this case. Appellant's fourth point of error is sustained. The judgment of the court below is reversed and the case remanded for further proceedings.

SEARS, Justice, concurring.

I concur with the opinion by Justice Draughn; however, I would also sustain point of error number two. There is no doubt that appellant is guilty of the murder of Raymundo Miranda. There is no doubt as to whether the murder occurred during the course of the robbery of the deceased.

There is no dispute that nothing was taken from the deceased except a partial pack of cigarettes. Also, there is no dispute that the deceased's wallet was still intact when his skeletal remains were discovered. I believe this undisputed evidence would require the court to also charge appellant with the lesser-included offense of murder. *See Cantu v. State*, cited in the foregoing opinion. Murder is a lesser-included offense to capital murder. The evidence of a lesser-included charge was raised, the accused requested the charge, and the jury was entitled to weigh the evidence and determine whether the appellant was guilty of murder or capital murder.

The jury asked a question regarding whether they could find the accused guilty of anything less than capital murder. Although the question has been lost and is not a part of this record on appeal, the court held a hearing to reconstruct, for purposes of a record on appeal, the question from the jury as well as other matters. The court then filed "findings of fact" which include the following:

> In another question, the jury asked whether they could convict the defendant of any offense other than capital murder. The trial court responded by instructing the jury they are referred to and bound by the court's charge.

It is clear from the question raised by the jury that they were having trouble with the charge. Because the court refused to charge the jury on the lesser-included offense of murder, the jury was forced to choose between finding appellant guilty of "capital" murder, or finding him *not guilty of any crime*. Since the appellant was obviously guilty of the "murder" of the deceased, they had no choice but to find him guilty of capital murder. The harm is obvious. Point of error number two should also be sustained.

HUDSON, Justice, dissenting.

It is well-established that evidence of a person's character is not admissible at the guilt/innocence phase of the trial to prove that he acted in conformity therewith. *See* TEX.R.CRIM. EVID. 404. Here, the State elicited testimony regarding appellant's affiliation with the Brown and Proud Gang. Appellant objected on the theory that such testimony constitutes evidence of other crimes, wrongs, or acts that improperly establish his bad character. *See* TEX.R.CRIM. EVID. 404(b).

To some degree, any evidence tending to show the commission of an offense will reflect poorly upon a defendant's character, and to this extent, his character is under attack from the moment the State commences to prove its case-in-chief. Therefore, not all evidence reflecting upon a defendant's character is inadmissible. If this were so, the State could never prove its case. Rather, evidence of extraneous acts and offenses is admissible if it has relevance apart from

supporting the conclusion that the defendant acted in conformity with his character. *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim.App.1997). Thus, where the evidence is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is admissible even if it collaterally reflects upon defendant's character. *See* TEX.R.CRIM. EVID. 404(b).

Street gangs have earned a very nasty reputation. In fact, "gang activity" has become virtually synonymous with "violent crime." [1] Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. *See United States v. Irvin*, 87 F.3d 860, 865 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 259, 136 L.Ed.2d 184 (1996). The danger exists, therefore, that a jury may attach a propensity for committing crimes to defendants who are affiliated with gangs, and guilt by association is a genuine concern whenever gang evidence is admitted. *Id.* However, like other extraneous acts, gang membership may be admissible if it is relevant for some purpose other than showing the defendant's bad character and its probative value is not substantially outweighed by its prejudicial effect. Gang membership, for example, may be admissible to show a conspiracy,[2] bias,[3] motive,[4] intent,[5] or opportunity to commit the crime.[6] Membership may also be admissible if its exclusion would leave a chronological or conceptual void in the story,[7] such as explaining the meaning of gang graffiti.[8] It is also

---

1. "In the 1992 [National Institute of Justice] survey, 82.9 percent of the 70 largest U.S. city police departments with an official gang definition reported violent crime as a part of their definition." G. David Curry, *Gang–Related Violence*, 28 CLEARINGHOUSE REV. 443, 445 (1994). The legislature has defined criminal street gangs as three or more persons having a common identifying sign or symbol or an identifiable leadership *who continuously or regularly associate in the commission of criminal activities*. *See* TEX. PENAL CODE ANN. § 71.01 (Supp.1998) (emphasis added).

2. *See United States v. Thomas*, 86 F.3d 647, 652 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 392, 136 L.Ed.2d 307 (1996).

3. *See United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

4. *See Stern v. State*, 922 S.W.2d 282 (Tex.App.-Fort Worth 1996, pet. ref'd).

5. *See United States v. Sargent*, 98 F.3d 325, 328 (7th Cir.1996).

6. *See United States v. Jobson*, 102 F.3d 214, 221 (6th Cir.1996).

7. *See United States v. Westbrook*, 125 F.3d 996 (7th Cir.), *cert. denied*, —— U.S.——, 118 S.Ct. 643, ——, L.Ed.2d —— (1997).

8. *See United States v. Sills*, 120 F.3d 917, 920 (8th Cir.1997).

commonly admissible to refute a defensive theory.[9]

Here, the record reflects that four members of the Brown and Proud Gang, as well as one non-member, spied the complainant walking down the street just as they were concluding an all-night party.[10] Appellant, who was a member of the gang, assaulted the complainant and attempted to rob him, but was prevented from doing so by Edward Cantu, one of the gang leaders. Later, when Cantu was no longer present, Roger Vidales, another member of the gang, produced a pipe wrench for the purpose of hitting the complainant in the head. Miguel Mendez, who was not a member, took the wrench away from Vidales. A short time later, appellant said, "Let's roll him," or "Let's gang him." Vidales struck the complainant with his fist, and appellant searched his pockets. Vidales and appellant then began kicking the complainant. Jesse Montoya and Mendez did not initially participate in the beating. However, Vidales and appellant began calling Montoya names and suggesting that he should be "down" with them, *i.e.*, an involved participant in the crime. Only then did Montoya join in kicking the complainant. The three gang members then dropped the complainant off a high bridge onto a concrete surface.

Shortly after the murder, appellant reported to Cantu what he and the other gang members had done to the complainant. Vidales, Montoya, and appellant also told Mendez not to say anything about what he had witnessed. Mendez did not report the murder to the police for fear of retaliation. When he was later contacted by police, Mendez cooperated with police, but did not initially implicate Montoya in the killing. When questioned on cross-examination about this omission, Mendez testified that he tried to protect Montoya because he felt Montoya had been forced to participate. When appellant's counsel asked Mendez why he had not been pressured to participate, Mendez explained that, unlike Montoya, he was not a member of the gang.

Later, appellant's counsel suggested during his cross-examination of Mendez that gangs have their own "language" and that when appellant said, "Let's gang him," he might have been talking about assaulting the complainant, rather than robbing him. Similarly, appellant's counsel argued to the jury that Mendez could not have known what Vidales and appellant intended because he could not understand their coded gang language. Counsel also reminded the jury that Cantu was not the leader of a Boy Scout troop, but the leader of a gang, and that his testimony should be disregarded for that reason alone.

Edward Cantu was a significant witness because appellant admitted to him shortly after the crime that he had killed the complainant. However, without the contextual knowledge that Cantu was a leader of the Brown and Proud Gang, appellant's spontaneous confession seems oddly inconsistent with normal human behavior. Moreover, without knowledge of the gang relationships, it is hard to explain why Montoya, but not Mendez, was pressured to participate in the murder. Finally, Mendez was a key witness whose credibility was strongly attacked by appellant's counsel. Accordingly, his failure to report the murder to police was explained in large measure by his fear of gang retaliation.

Thus, the State and defense had difficulty establishing the facts without reference to the gang relationship between appellant, Cantu, Montoya, and Vidales. Appellant's gang membership falls under the "same transaction contextual evidence" exception to Rule 404(b) as evidence necessary to the jury's understanding of the charged offense. *See Nelson v. State*, 864 S.W.2d 496, 498 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). Under the record before us, I do not believe the trial court abused its discretion in admitting evidence of gang membership.

**9.** *Sargent,* 98 F.3d at 328.

**10.** The record reflects that Edward Cantu, Roger Vidales, Jesse Montoya, and the appellant were members of the gang. Miguel Mendez was not a member.

Moreover, even if appellant's participation in the Brown and Proud Gang was not contextually related to the offense, its admission was utterly harmless under the facts presented here. First, appellant made no objection when the State's attorney first advised the jury in his opening statement that the case involved members of the Brown and Proud Gang. Second, appellant's conviction was supported by the testimony of an eyewitness to the crime who was not a member of the gang. Third, no evidence was admitted to show that one aspect of the Brown and Proud Gang was that its membership should commit violent criminal acts. In fact, the record demonstrates that the leader of the gang opposed any assault upon the complainant, and appellant was fearful that Cantu would be angry when he later learned of the murder. Thus, there is little likelihood under these facts that the jury would find appellant guilty by association with the Brown and Proud Gang.

For these reasons, I respectfully dissent.