

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-210-CR

JOHN KYLE LAROQUE                                             APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

### FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant John Kyle LaRoque appeals his conviction for driving while intoxicated (DWI).[2] In three issues, he contends that the trial court erred by providing the jury with a written definition of "operating" and by denying his requests for jury charge instructions regarding reasonable suspicion and probable cause. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003).

**Background Facts**

Laura Davis is a bartender at the Mule Pub in Fort Worth. Late one night, Davis was standing on the patio of the bar when she saw appellant's black BMW drive very fast down a narrow street next to the bar, make a U-turn, and then park in a lot across the street from the bar.[3] The BMW "bounc[ed] back and forth across the street" and came within feet of hitting parked cars. For about twenty minutes, appellant stayed in the car with its motor running and its lights on. Davis continued to watch the car and eventually called 911 because she was concerned that appellant was intoxicated and would try to enter her bar. She waited until officers arrived to make sure that they approached the right car.[4]

Fort Worth Police Department Officer Brian Johnson received a dispatch call and went to the scene.[5] When he arrived, he saw the BMW, which was still running with its lights on. He approached the car and saw appellant sitting in the driver's seat with his head down "as if he were asleep." Officer Johnson also noticed that the gearshift was still "in drive."

---

[3]Davis could not say exactly how fast appellant was driving, but she affirmed on cross-examination that he was driving abnormally fast.

[4]Davis did not get close enough to the car to see appellant inside, and she therefore could not identify him in court or testify with certainty that he was the person in the BMW that she saw. However, Davis affirmed that the BMW was parked in a well-lit area where she could easily see that officers approached the same BMW that had been driving erratically. She said, "[T]here was a space on either side of him. . . . It wasn't [a] jammed parking lot at that point."

[5]Officer Johnson's sergeant spoke with Davis about what she had seen.

Officer Johnson knocked on the car's window several times. When appellant finally responded, he pulled forward until the car's front tires touched a curb. Appellant stopped the car and then rolled down his window. After Officer Johnson asked appellant to get out of the car, Officer Johnson noticed that appellant smelled like alcohol, had loud and slurred speech, and was staggering and unsteady. Also, appellant's eyes were bloodshot and watery. Based on his observations, Officer Johnson, who is certified to perform field sobriety testing, turned on his dashboard camera and conducted three standardized tests. Appellant failed all three tests, and Officer Johnson determined that appellant had lost the normal use of his mental and physical faculties.[6] Officer Johnson arrested appellant for "suspicion of DWI" and took him to jail.

At the jail, Fort Worth Police Department Officer Rene Frias met with appellant in an intoxilyzer room and read a statutory warning to him. Officer Frias asked appellant for a breath specimen, which appellant refused. Officer Frias then repeated the walk-and-turn test, which appellant failed, and the one-leg-stand test, which he passed.[7]

---

[6]According to Officer Johnson, appellant showed all six clues for intoxication on the horizontal-gaze-nystagmus test, two of eight clues on the walk-and-turn test, and three of four clues on the one-leg-stand test.

[7]Officer Frias repeated these tests so that they could be performed in a controlled environment without wind or traffic distractions.

The State charged appellant with DWI. Appellant pled not guilty. The jury found him guilty, and the trial court sentenced him to ninety days' confinement but suspended the sentence for two years and placed him on probation. Appellant filed his notice of appeal.

## Supplemental Jury Instruction

In his first issue, appellant contends that the trial court erred by providing a written definition of "operating" to the jury upon the jury's request after its deliberation of his guilt had begun. The penal code provides that a person commits DWI when the person "is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). But the penal code does not define "operating." *See id.*; *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995); *Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.—Fort Worth 2008, no pet.) (explaining that courts have construed "operating" "very broadly").

The trial court did not define "operating" in its original charge to the jury. After the jury had been deliberating awhile, its foreman sent a note to the trial court asking whether operation of a motor vehicle has a legal definition. The foreman then sent another note to the court stating,

> It appears we are making no headway. Members of the jury on both sides have stated that they will not change their vote. The issue is whether [appellant] was "operating a motor vehicle" or not. Without a legal definition[,] there are opinions that he was and he was not. Still split 3-3.[8]

---

[8]For ease of readability, we have changed the style of the foreman's note from all capital letters to the structure of a regular sentence.

4

In response to the notes, the trial court proposed to the parties that it would give the jury the following instruction:

> With respect to your note concerning "operating a motor vehicle[,]" you are instructed as follows. There is no statutory definition of the term "operate." To find operation of a motor vehicle, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle that would enable the vehicle's use. A person may be said to operate a motor vehicle if he exerts personal effort upon the motor vehicle in a manner that shows intentional use of the vehicle for its intended purpose.

After appellant's counsel asked the trial court a question about the instruction, she ultimately told the court that she did not object to it, and the court gave the instruction to the jury. Approximately an hour later, the jury found appellant guilty.

Appellant contends on appeal that the trial court's instruction was improper because (1) "operating" does not have a peculiar legal meaning and the term should have been left to the jury's interpretation of the term's plain, ordinary meaning, and (2) the instruction was a comment on the weight of the evidence. The State contends that the trial court gave the jury a correct, necessary instruction.

"When the trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction. . . . Therefore, in determining whether the subject matter of the communication was proper, we look to the rules governing instructions." *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993)

5

(citations omitted); *see* Tex. Code Crim. Proc. Ann. art. 36.16 (Vernon 2006) (stating that after the parties finish their closing arguments, a "further charge" may be given to a jury upon the jury's request); *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd); *Rogers v. State*, 38 S.W.3d 725, 729 (Tex. App.—Texarkana 2001, pet. ref'd). Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred. If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

A trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury. *Roise v. State*, 7 S.W.3d 225, 242 (Tex. App.—Austin 1999, pet. ref'd), *cert. denied*, 531 U.S. 895 (2000); *Macias v. State*, 959 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd); *see also* Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007) (explaining that a trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case"). "[T]erms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance." *Medford v. State,* 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *see Lee v. State*, 866 S.W.2d 298, 301 (Tex. App.—Fort Worth 1993, pet ref'd) ("When a defendant is prosecuted for violation of a statute, it is not error for the court to refuse to define a word used in

6

the statute when the word is used in its ordinary sense, and is easily comprehended by everyone."). However, when a term is not statutorily defined but has an "established legal meaning, or . . . a peculiar and appropriate meaning in the law," then "[j]ustice would be better served . . . if jurors were provided a precise, uniform definition to guide their determination." *Medford*, 13 S.W.3d at 772; *see also* Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

We have held that "operating" does not have an "established" or "peculiar" meaning but rather has a plain meaning that jurors are free to construe. *Yocom v. State*, No. 02-03-00181-CR, 2004 WL 742888, at *11 (Tex. App.—Fort Worth Apr. 8, 2004) (not designated for publication), *pet. ref'd*, 149 S.W.3d 159 (Tex. Crim. App. 2004). Thus, trial courts are not required to define "operating." *Id.*; *see Brown v. State*, 773 S.W.2d 65, 67–68 (Tex. App.—Fort Worth 1989, pet. ref'd). However, merely because a trial court is not required to give an instruction regarding a term does not mean that the court errs by doing so. *See Koah v. State*, 604 S.W.2d 156, 162 (Tex. Crim. App. [Panel Op.] 1980) (indicating that a definition given by a trial court was proper, although it was not taken from a statute, because the definition was "substantially the same as the meaning given the term when construed by other Courts"); *Kimbro v. State*, 157 Tex. Crim. 438, 440, 249 S.W.2d 919, 920 (1952); *Haynes v. State*, 150 Tex. Crim. 337, 339–40, 200 S.W.2d 824, 825–26 (1947); *Lockhart v. State*, 108 Tex. Crim. 597, 599,

7

1 S.W.2d 894, 895 (1927) ("In our opinion it is not necessary to give any definition of the terms used in the statute, but, one having been attempted, we think it not erroneous.").

The trial court's definition of "operating a motor vehicle" tracks the definition that has been routinely adopted by courts in this state.[9] *See Denton*, 911 S.W.2d at 390; *Dornbusch*, 262 S.W.3d at 436; *Yocom*, 2004 WL 742888, at *2; *Hearne v. State*, 80 S.W.3d 677, 679 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.). We have not found any authority holding that, in a circumstance such as the one in this case, a trial court errs by merely giving the jury a neutral, legally correct definition of a term that is included in a statute (but not defined by the statute) without giving any indication to the jury about how it should factually apply that definition. It is clear that the jury needed a definition of "operating a motor vehicle" to come to its decision. Thus, we hold that even though the trial court was not obligated to give a definition of "operating a motor vehicle," it did not exceed its "broad discretion" by providing the correct definition. *See Roise*, 7 S.W.3d at 242.

Appellant contends that even if the trial court gave the jury the correct definition of "operating a motor vehicle," the definition, given while the jury was

---

[9]Appellant does not argue that the trial court's definition of "operating a motor vehicle" is incorrect; he argues that the definition should not have been given.

deliberating, was an improper comment on the weight of evidence. Trial courts should not opine or comment about the weight of evidence. *See* Tex. Code Crim. Proc. Ann. art. 36.14, art. 38.05 (Vernon 1979); *Brown v. State*, 122 S.W.3d 794, 798, 801 (Tex. Crim. App. 2003) (explaining that a trial court's comment on the weight of evidence "reduces the State's burden of proving guilt beyond a reasonable doubt" and stating that an instruction may be an impermissible comment on evidence when it is "unnecessary and fails to clarify the law for the jury"), *cert. denied*, 541 U.S. 938 (2004); *Hess v. State*, 224 S.W.3d 511, 514 (Tex. App.—Fort Worth 2007, pet. ref'd) (noting that jurors are "prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence") (quoting *Lagrone v. State*, 84 Tex. Crim. 609, 615, 209 S.W. 411, 415 (1919)). "A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, that indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's approach to its case." *Hoang v. State*, 997 S.W.2d 678, 681 (Tex. App.—Texarkana 1999, no pet.) (footnotes and citations omitted).

To argue that the trial court's definition of "operating a motor vehicle" commented on the weight of evidence, appellant relies on the court of criminal appeals's decision in *Watts v. State*. 99 S.W.3d 604 (Tex. Crim. App. 2003). In *Watts*, the trial court took judicial notice of a previous judicial decision and then specifically advised the jury about the connection between the law from that

9

decision to a disputed fact in the case. *Id.* at 606–13. The court of criminal appeals held that the trial court's act was improper because the court addressed "the jury on the specific application of law to facts in a different judicial decision, immediately before the parties rested and before she read the charge to the jury." *Id.* at 613.

Unlike in *Watts*, the trial court in this case did not link its neutral definition to a particular factual circumstance or imply whether the jury could find that appellant had operated the BMW based on the definition that the court gave. Also, the definition given by the trial court, while giving a neutral explanation of the law, did not "single[] out a particular piece of evidence," which might have made it an impermissible comment on the evidence. *See Bartlett v. State*, 270 S.W.3d 147, 151–52 (Tex. Crim. App. 2008). Finally, the definition did not comment on the evidence by improperly assuming the truth of a controverted issue. *See Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).

Thus, we hold that the trial court's providing a supplemental instruction that correctly defined "operating a motor vehicle" in response to the jury's notes was proper and did not comprise a comment on the weight of the evidence. *See Chance v. State*, 292 S.W.3d 138, 141–42 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that a trial court appropriately responded to a jury's question during its deliberation to clarify a question of law); *see also Lucio v. State*, No. 02-08-00179-CR, 2010 WL 1730865, at *8 (Tex. App.—Fort Worth Apr. 29, 2010, pet. filed) (mem. op., not designated for publication) (holding that

10

a trial court did not err by responding to a jury's question about whether the law prohibits a family member from speaking on a defendant's behalf during a sentencing phase). We overrule appellant's first issue.

## Article 38.23 Instructions

In his second and third issues, appellant contends that the trial court erred by refusing his request to include instructions about reasonable suspicion and probable cause in the jury charge under article 38.23 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). After the jury heard all of the evidence and adjourned, appellant's counsel said,

> I would like to request a 38.23 charge in the jury charge, Your Honor, based on reasonable suspicion. I have an eyewitness who never identified the defendant, [and] an officer who never saw him driving.
>
> I would also like to ask for a 38.23 jury charge on probable cause in that the officer said he made the determination to arrest [appellant] based on a .08 or higher breath alcohol content from the [horizontal-gaze-nystagmus test] alone.

Article 38.23(a) provides,

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

11

Tex. Code Crim. Proc. Ann. art. 38.23(a). The court of criminal appeals has explained that under article 38.23, juries may only resolve disputed facts; juries may not

> be expected to decide whether the totality of certain facts do or do not constitute "reasonable suspicion" under the law. That would require a lengthy course on Fourth Amendment law. Even many experienced lawyers and judges disagree on what constitutes "reasonable suspicion" or "probable cause" in a given situation. It is the trial judge who decides what quality and quantum of facts are necessary to establish "reasonable suspicion." *Only if one or more of those necessary facts are disputed does the judge ask the jury to decide whether the officer's belief in those facts was reasonable.*
>
> . . . .
>
> . . . What appellant wanted was a jury instruction on whether the totality of facts that Officer Lily listed constituted "reasonable suspicion" under the Fourth Amendment. Appellant's proposed instruction focused only on the law. It did not set out any specific historical fact (e.g., face trembling, hands shaking, fumbling for wallet, etc.) that the jury was to focus upon . . . .
>
> . . . .
>
> But the jury cannot "wrestle with" the legal determination of whether certain facts do or do not constitute "reasonable suspicion."

*Madden v. State,* 242 S.W.3d 504, 511–13 (Tex. Crim. App. 2007) (emphasis added) (footnote omitted); *see Garza v. State*, 126 S.W.3d 79, 86–88 (Tex. Crim. App. 2004) (holding similarly); *White v. State,* 201 S.W.3d 233, 249 (Tex. App.— Fort Worth 2006, pet. ref'd) ("Because a jury charge must be submitted only if a factual dispute exists as to how the evidence was obtained, we hold that the trial court did not err in refusing to include the requested instruction."). Thus, the defendant must establish three requirements to be entitled to an article 38.23

12

instruction: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden*, 242 S.W.3d at 510–11 (explaining further that the "disputed fact must be an essential one in deciding the lawfulness of the challenged conduct"); *see Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); *see also Merriweather v. State*, 501 S.W.2d 887, 891 (Tex. Crim. App. 1973) (holding that when the specific facts used by the court to determine the existence of probable cause were uncontested, the defendant was not entitled to a jury instruction concerning other facts—which were contested—that did not defeat the finding of probable cause).

Appellant's second issue complains about "insufficiency of the State's proof" showing the officer's reasonable suspicion to detain him; his third issue concerns "insufficiency of the State's proof" for Officer Johnson's probable cause to arrest him. Neither of these issues and neither of the requested instructions that are quoted above reveals any specific disputed facts that arise from the witnesses' testimony. Instead, appellant's requested instructions merely would have impermissibly asked the jury to determine whether the totality of undisputed facts comprised reasonable suspicion or probable cause. *See Madden*, 242 S.W.3d at 512. In other words, appellant's requested instructions did not regard disputed facts but rather allegedly inadequate facts. Appellant's arguments, which highlight Davis's inability to identify appellant and Officer Johnson's

13

testimony that he believed appellant to be intoxicated based only on the horizontal-gaze-nystagmus test, maintain his focus on allegedly inadequate facts.

Because appellant has not shown that his requested instructions were based on disputed facts connected to his detention or arrest, because appellant has not articulated on appeal any disputed facts that should have formed the justification for a charge under article 38.23, and because we conclude upon our review of the record that it does not demonstrate the existence of such disputed facts that are material and essential to the reasonable suspicion or probable cause issues, we hold that appellant was not entitled to an article 38.23 instruction.[10] *See Romo v. State*, Nos. 02-09-00153-CR, 02-09-00154-CR, 02-09-00155-CR, 2010 WL 1427272, at *6–7 (Tex. App.—Fort Worth Apr. 8, 2010, pet. filed).

In another part of his third issue, appellant contends that Officer Johnson improperly testified that appellant's performance on the horizontal-gaze-nystagmus test signaled that he had a blood alcohol concentration of greater

---

[10]Appellant disagreed with Officer Johnson's ultimate conclusion that appellant had lost the normal use of his mental faculties because Officer Johnson conceded that he did not specifically know what "normal use" was as applied to appellant. But appellant did not produce evidence to create a conflict, among other undisputed facts, about (1) his speeding and driving erratically on a street before pulling into a parking lot, keeping his engine running with his car still in the "drive" gearshift position and with its lights on, and apparently sleeping for over twenty minutes; (2) his slow response when Officer Johnson knocked on his window; (3) his odor of alcohol, watery eyes, and loud slurred speech; or (4) his failures on the standardized field sobriety tests that officers administered at the scene and at the jail.

than .08. *See Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App.) ("A witness may not use the [horizontal-gaze-nystagmus test] evidence to quantify the defendant's [blood alcohol concentration].")*, cert. denied*, 513 U.S. 931 (1994). However, appellant elicited this testimony during cross-examination and did not object to the testimony. Therefore, to the extent that appellant relies on this argument as an independent basis for alleging error, we hold that he forfeited his complaint. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *Mai v. State*, 189 S.W.3d 316, 323 (Tex. App.—Fort Worth 2006, pet. ref'd).

For all of these reasons, we overrule appellant's second and third issues.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 19, 2010