Affirmed and Memorandum Opinion filed February 15, 2005









Affirmed
and Memorandum Opinion filed February 15, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00034-CR

____________

 

GABRIEL CASTILLO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 12th
District Court

Walker County, Texas

Trial Court Cause No. 20,166

 



 

M E M O R A N D U M   O P I N I O N








Appellant Gabriel Castillo was convicted
of murder and sentenced to sixty years’ imprisonment in the Texas Department of
Criminal Justice-Institutional Division. 
In sixteen issues, appellant complains of the following errors: (1) the
trial court refused to conduct a post-trial in camera inspection of the
prosecution’s file to determine whether it contained Brady materials not
disclosed to the defense; (2) the trial court admitted unfairly prejudicial
photographs of the victim; (3) the State presented evidence suggesting
appellant’s gang affiliation in violation of Rule 403 and 404b; (4) the
presentation of gang affiliation evidence rendered appellant’s self-defense
trial fundamentally unfair; (5) the trial court refused to declare a mistrial
after the prosecutor’s improper jury argument; (6) the prosecutor’s improper
jury argument rendered appellant’s self-defense trial fundamentally unfair; (7)
the jury rejected appellant’s self-defense theory on factually insufficient
evidence; (8) the jury was improperly charged on the limited application of
self-defense based on “provoking the difficulty”; (9) the jury charge
improperly limited the applicability of self-defense on verbal provocation
alone; (10) the instruction on verbal provocation alone was an improper comment
on the weight of the evidence; (11) the trial court erred in admitting a
written statement appellant gave the authorities while in custody; (12) the
trial court permitted the State to dilute the meaning of “beyond a reasonable
doubt”; (13) the State should have been required to bear the burden of negating
mitigating evidence of sudden passion; (14) the trial court’s instruction on
“good conduct time” likely resulted in a longer period of incarceration; (15)
the evidence was insufficient to support a sixty-year sentence; and (16) the
sentence amounts to cruel and unusual punishment in violation of the Eighth
Amendment and the Texas Constitution.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of March 27, 1999, Lee
Anzuldua and five other young men, some of whom had been drinking, were riding
in a green Dodge on the way to the home of an acquaintance who was old enough
to buy them beer.  Appellant was also on
the road that night, driving a red Blazer and accompanied by Daniel Ortiz.  When the two groups saw each other, Anzuldua
and Ortiz exchanged gang signs or otherwise gestured at each other from their
car windows.  Both groups then drove to a
Burger King restaurant, where everyone got out of their cars in the parking
lot.  Either appellant or Ortiz began
throwing beer cans at Anzuldua and his group. 
A can hit Anzuldua, who picked it up and threw it at appellant, hitting
him either in the face or the back of the head. 
Appellant, who was holding a gun, then shot Anzuldua in the chest.  Anzuldua died from the gunshot wound.








At trial, the State argued that appellant
shot Anzuldua because they were members of rival gangs.  According to the State’s theory, members of
gangs known as MS and F Troop did not get along with members of the OHL gang.  The State’s witnesses included three of the
individuals in the car with Anzuldua that night.  Although these witnesses denied being gang
members, evidence was presented that at least some of the victim’s group were
either members of, or associated with, the MS or F Troop gangs, and that
Anzuldua was a member of the MS gang. 
Over objection, the State attempted to show that appellant and Ortiz
were members of the OHL gang.  Testimony
was also presented that the gangs did not get along, and acts of violence
occurred between them.  

The details of the events and
circumstances of that night were strongly contested and sometimes
contradictory.  The State’s witnesses
generally testified that, as the victim’s group was traveling in the Dodge,
appellant and Ortiz pulled alongside them in the Blazer.  Then, either Ortiz “threw a gang sign” at
them and Lee responded with a gang sign or hand gesture, or Lee gestured at
them and Ortiz responded with a gang sign. 
Appellant and Ortiz then followed Anzuldua’s group to the Burger King
parking lot, where appellant parked the Blazer behind the Dodge so as to block
it in.  Everyone got out of the cars, and
appellant and Ortiz began throwing beer cans at Anzuldua’s group.  Appellant either had the gun in his
possession during the confrontation or Ortiz handed him the gun.  One witness testified that Ortiz handed
appellant the gun and told appellant to “shoot them all.”  At some point, appellant threw a full beer
can at Anzuldua, who picked it up and threw it back at appellant, hitting him
in the face.  According to the witnesses,
appellant stopped for a moment, and then he raised his hand holding the gun and
shot Anzuldua in the chest.  Appellant and
Ortiz then got back in the Blazer and drove away.








Appellant did not dispute that he shot and
killed the victim.  However, he argued
that he acted in self-defense. 
Appellant’s self-defense argument was premised on his fear of gang-related
violence where he lived and gang members in the victim’s group, particularly
Anzuldua.  He testified that he was not a
member of OHL, but admitted associating with its members and having a tattoo of
a grim reaper with “OHL” on its blade. 
Appellant described his background, and he testified that there was gang
violence where he lived, including drive-by shootings.  He said that he was told to be afraid of
“these outlaws by MS.”  He also stated
that Anzuldua had attacked him three times in the past.  

Appellant testified that, on the night of
the shooting, he and Ortiz went to the Burger King because they wanted to get
something to eat.  While driving there,
the Dodge carrying Anzuldua and the others abruptly pulled in front of
him.  He recognized Anzuldua in the
car.  He saw Anzuldua “doing something
with his hands” and saw Ortiz make a hand signal back to him.  Appellant and Ortiz then continued on to the
Burger King.  When they got there,
appellant saw Anzuldua’s group, and he became afraid that something was going
to happen.  Appellant knew that Ortiz had
a gun with him, and appellant took it and put it in the front of his pants
because Ortiz had been drinking and appellant “did not want anything to
happen.”  Appellant and Anzuldua then got
in a fistfight, but appellant gave up the fight and began walking away.  Someone then hit him in the back of the head
with a beer can or beer bottle. 
Appellant testified that he “saw stars” and his knees buckled.  He then grabbed the gun and shot back over
his shoulder.  He and Ortiz then
left.  Appellant claimed he did not know
Anzuldua had been shot.

On cross-examination, appellant was asked
about inconsistencies between his testimony and a statement he had given police
when he was arrested.  In the statement,
appellant stated that, when he was hit with the beer can, he turned around and
saw Anzuldua standing in front of him and starting towards him.  He pulled his gun out of his right front
pocket, and not aiming at anyone, he “just shot at [Anzuldua] and the dudes
that were with him.”  At trial, appellant
contended it was a misstatement that he was looking at Anzuldua when he fired
the gun.  Appellant admitted, however,
that he did not see anyone out there with a gun or knife, and that he was the
only one with a gun.  Appellant denied
following Anzuldua’s group to the Burger King or parking so as to block them
in.  Appellant also denied that he threw
a beer can at Anzuldua or his group, but testified that Ortiz did throw a beer
can at them.  Ortiz did not testify.








The jury rejected appellant’s self-defense
argument and convicted him of murder.  At
the punishment phase, the jury also declined to find that appellant acted with
sudden passion from an adequate cause, and sentenced him to sixty years’
imprisonment.  This appeal followed.

ANALYSIS OF THE ISSUES

I.        The
Trial Court’s Denial of Appellant’s Post-Trial Motion for In Camera
Inspection of the Prosecution Team’s File for Undisclosed Brady
Materials

Appellant’s counsel on appeal, who was
appointed after appellant’s trial, filed a post-trial motion in the trial court
in which he asserted that the prosecution team might be in possession of
exculpatory and impeachment evidence, and he requested the trial court conduct
an in camera inspection of the State’s file for undisclosed Brady[1]
material.  After a hearing on the motion,
the trial court denied his request.  In
his first issue, appellant complains the trial judge erred in refusing his
request for an in camera inspection of the prosecution’s file to
determine whether it contained Brady material not disclosed to him.  








In Brady v. Maryland, the United
States Supreme Court held that the prosecution violates a defendant’s due
process rights when it suppresses evidence in its possession favorable to the
defendant “where the evidence is material either to the guilt or to punishment
irrespective of the good faith or bad faith of the prosecution.”  373 U.S. at 87.  Brady evidence includes impeachment
evidence as well as exculpatory evidence. 
United States v. Bagley, 473 U.S. 667, 676 (1985).  Such evidence is material if there is a
reasonable probability that, had the evidence been disclosed to the defense,
the results of the proceeding would have been different.  Kyles v. Whitley, 514 U.S. 419, 434 (1995);
Bagley, 473 U.S. at 682.  A
“reasonable probability” is a probability sufficient to undermine confidence in
the outcome of the trial.  Bagley,
473 U.S. at 682; Ex parte Kimes, 872 S.W.2d 700, 702–03 (Tex. Crim. App.
1993).  This court has said that to
invoke Brady, “the accused must present evidence that: (1) the
prosecution suppressed or withheld evidence; (2) the evidence would have been
favorable to the accused; and (3) this evidence would have been material to the
accused’s defense.”  Cruz v. State,
838 S.W.2d 682, 686 (Tex. App.—Houston [14th Dist.] 1992, pet. ref’d) (citing Moore
v. Illinois, 408 U.S. 786, 794‑95 (1972)).

Appellant relies upon Thomas v. State,
in which the Texas Court of Criminal Appeals held that an accused did not have
a right to complete disclosure, but did have a right to have the trial court
examine certain material in camera and then order disclosure of any
information the examination indicated was appropriate for disclosure.  837 S.W.2d 106, 113–14 (Tex. Crim. App.
1992) (en banc) (per curiam).  Thomas
relied upon Pennsylvania v. Ritchie, in which the United States Supreme
Court held that a defendant is entitled to an in camera review in his
post-verdict efforts to establish that his Brady due process right had
been violated.  480 U.S. 39, 58
(1987).  Ritchie made clear,
however, that a defendant is entitled to that procedure only if he first
establishes a basis for his claim that the prosecution file contains evidence
he is entitled to under Brady.  Id.
at 58 n.15 (citing United States v. Valenzuela‑Bernal, 458 U.S.
858, 867 (1982) (“He must at least make some plausible showing of how their
testimony would have been both material and favorable to his defense.”)).

Appellant suggests that the proper test
for triggering the requirement of an in camera inspection by the trial
court is “some plausible showing” that (1) the evidence exists and (2) the
evidence would be both material and favorable to the defense.  See Page v. State, 7 S.W.3d 202,
215–16 (Tex. App.—Fort Worth 1999, no pet.) (en banc) (Dauphinot, J.,
dissenting), 217 (Richards, J., joined by Livingston, J., dissenting).  Appellant also cites Ransonette v. State,
in which the Court of Criminal Appeals stated, “we know of no constitutional
obligation of the trial court to peruse the prosecutor’s file for exculpatory
evidence in the absence of a specific request supported by some showing that
such evidence exists.”  550 S.W.2d 36, 40
(Tex. Crim. App. 1976).








We need not decide the proper test to
establish the right to an in camera inspection, because, even applying
appellant’s suggested test, we find no plausible showing that evidence exists
that is both favorable and material to appellant’s case.  Appellant lists several factors he contends constitute
a plausible showing[2]
and cites two cases in which Walker county prosecutors failed to disclose
evidence, see Cruice v. State, No. 14-96-01362-CR, 2000 WL 328197 (Tex.
App.—Houston [14th Dist.] Mar. 23, 2000, pet. ref’d) (not designated for
publication); Parker v. State, No. 01-97-00200-CR, 1999 WL 681905 (Tex.
App.—Houston [1st Dist.] Aug. 31, 1999, pet. ref’d) (not designated for
publication), and asks us to take judicial notice of documents filed in Daniel
Ortiz’s case, suggesting that Ortiz and the State may have entered into an
agreement that violated appellant’s rights.[3]  In essence, appellant contends he is entitled
to an in camera hearing based on the following: (1) the State’s case was
weak because the witnesses were biased, intoxicated, and unreliable; (2) Ortiz,
who could have corroborated that appellant did not throw a beer can at the
victim’s party, pleaded guilty and did not testify; and (3) the prosecutors
must be withholding evidence because they have done it before.  Appellant’s factors amount to nothing more
than unsubstantiated speculation which does not rise to the level of a
“plausible showing” that evidence exists that would be material and favorable
to appellant’s case. 








Additionally, at the hearing on the
motion, appellant’s counsel on appeal did not identify any information he
believed was being withheld by the State; instead, he argued that the trial
court should conduct the inspection because the State did not permit him to
review its file and so he did not know what was in it.  Appellant’s counsel reasoned that the file
might contain something new or something important that trial counsel did not
use, and the only way to find out would be for the trial court to conduct the in
camera review.  However, appellant’s
trial counsel stated that he had access to the State’s file under the State’s
“open file” policy.  Trial counsel stated
that he was allowed access to the offense reports and statements in the
prosecution’s file.  He also stated that
the State cooperated in the discovery process and discovery was supplemented as
additional information was learned through the trial.  The hearing reinforces our determination that
appellant has failed to make any kind of showing that entitled him to an in
camera review of the prosecution’s file.

We overrule appellant’s first issue.

II.       The
Trial Court’s Admission of Photographs of the Victim

In his second issue, appellant contends
the trial court erred by overruling his objection to the State’s introduction,
in the guilt-innocence phase of the trial, of two photographs of the
victim.  Appellant contends that the
evidence should have been excluded under Texas Rule of Evidence 403.  We will limit our review to only State’s Exhibit
1, a photograph of the victim during his life, with his hands together in a
praying pose, because the second photograph, State’s Exhibit 2, was not
admitted into evidence. 

Under Rule 403, relevant evidence is
admissible unless its probative value is substantially outweighed by the danger
of unfair prejudice, confusion of issues, or misleading the jury, or by
consideration of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403; Montgomery v.
State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh’g).  The rule favors the admissibility of relevant
evidence, and the presumption is that relevant evidence will be more probative
than prejudicial.  Long v. State,
823 S.W.2d 259, 271 (Tex. Crim. App. 1991).








The admission of photographs into evidence
is within the discretion of the trial court and will not be disturbed absent an
abuse of that discretion.  Wyatt v.
State, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000).  A non‑exhaustive list of factors to
consider in determining whether the probative value of photographs is
outweighed by the danger of unfair prejudice includes the number of exhibits
offered, their gruesomeness, detail, and size, whether they are black and white
or color, whether they are close‑up, whether the body is naked or
clothed, and the availability of other means of proof and the circumstances
unique to each case.  Williams v.
State, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997).  Generally, a photograph is admissible if
verbal testimony as to matters depicted in the photograph is also
admissible.  Id. at 195.

Appellant contends that the trial court
erred in admitting State’s Exhibit 1, a photograph of the victim in a praying
pose, because appellant admitted firing the fatal shot and there was no need to
adduce this evidence at the guilt phase. 
Therefore, appellant contends the case should be reversed on this
ground.  The State contends the
photograph was the best available depiction of “who the victim was” and how he
appeared before his death. 

First, we presume that the photograph is
relevant because appellant did not object to its relevancy at trial.  And, in any event, it was relevant to
identifying the victim.  Therefore, we
consider only whether its probative value is substantially outweighed by the
danger of unfair prejudice.  The exhibit
provided in the record is a black-and-white photocopy of a picture,
approximately 8½ by 11 inches, of the victim’s face and hands in a praying
position.  No other photographs depicting
the victim while alive are in the record. 
Additionally, the victim’s father testified that the photograph was the
best recent photograph he had of the victim. 
Although appellant contends this evidence was unnecessary, he provides
no explanation of how it is unfairly prejudicial.  Therefore, we find that the trial court did
not abuse its discretion in admitting the photograph.  See Lewis v. State, No. 14-98-00895-CR,
1999 WL 976245 (Tex. App.—Houston [14th Dist.] Oct. 28,1999, no pet.) (not
designated for publication) (holding that photograph of deceased victim with
his birthday cake was relevant and admissible for in-court identification
purposes).  








We overrule appellant’s second issue.

III.      Gang
Affiliation Issues

In issues three through six, appellant
complains of the State’s presentation of evidence of appellant’s alleged gang
affiliation in the guilt-innocence phase of the trial and the State’s
references to gang affiliation in its jury argument.  The State responds that the evidence was
relevant and admissible to show motive, and it was not overly prejudicial.  We address each of appellant’s issues in
turn.

A.      Admissibility
under Rules of Evidence 404(b) and 403 

In his third issue, appellant contends the
trial court erred in allowing the State to present evidence of appellant’s gang
affiliation over appellant’s Rule 404(b) and 403 objections.  Appellant contends that the gang affiliation
evidence was inflammatory and unnecessary because, in his opening statement,
appellant judicially admitted killing the victim; therefore, the only element
the state was required to prove was whether the act was committed intentionally
or knowingly.  Appellant also contends
the evidence was not admissible because it was irrelevant and was used to show
that he was a bad and dangerous person who acted in conformity with his bad
character.  We disagree.

Under Rule 404(b), evidence of other
crimes, wrongs, or acts is not admissible to prove a person’s character and/or
to show that the person acted in conformity with that character. See Tex. R. Evid. 404(b).  However, such evidence may be admitted if it
is relevant  to motive, identity, intent,
opportunity, preparation, plan or absence of mistake.  Id. 
As the Texas Court of Criminal Appeals has explained, “It has long been
the rule in this State that the jury is entitled to know all relevant
surrounding facts and circumstances of the charged offense; an offense is not
tried in a vacuum.”  Moreno v. State,
721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (citing Archer v. State, 607
S.W.2d 539, 542 (Tex. Crim. App. 1980)). 









The State’s theory was that appellant
intentionally shot the victim because he was a member of a rival gang.  Thus, the gang affiliation evidence was
relevant evidence of motive to show an intent to kill, and is permissible under
Rule 404(b).  See Medina v. State,
7 S.W.3d 633, 644 (Tex. Crim. App. 1999) (stating that evidence of gang
affiliation “was most relevant as to appellant’s motive and intent on the night
of the offense”); Cunningham v. State, 982 S.W.2d 513, 523 (Tex.
App.—San Antonio 1998, pet. ref’d) (holding trial counsel was not ineffective
for failing to object to evidence of defendant’s gang affiliation because such
evidence was admissible to show motive); Williams v. State, 974 S.W.2d
324, 331 (Tex. App.—San Antonio 1998, pet. ref’d) (holding evidence of gang
affiliation admissible under Rule 404(b) to show motive).  Because appellant’s affiliation with a rival
gang was relevant to show the motive for the victim’s murder, rather than mere
conformity with character, the trial court did not abuse its discretion by
allowing it.

Even if the evidence is admissible under
Rule 404(b), however, it may still be excluded under Rule 403 if the danger of
unfair prejudice substantially outweighs its probative value.  While it is true that evidence of gang
affiliation may prejudice a jury to some extent, we find that, in the context
of this case, the danger of any unfair prejudice does not substantially
outweigh the probative value of the evidence. 









Appellant injected gang-related issues
into the case in his opening statement, asserting that “[w]hat you’re going to
learn about those people is that they are associated with two gangs . . .
.”  Appellant’s self-defense argument was
premised on his fear for his safety because of gang-related violence where he
lived and threats of violence from the gang members in the victim’s group.  Appellant also did not object when the State
questioned its witnesses regarding their gang affiliations, and, on direct
examination, appellant himself testified concerning his association with gang
members.  Thus, the evidence of
appellant’s gang affiliation was relevant both to the State’s theory and
appellant’s defense, and put the circumstances of the crime in context for the
jury.[4]  Therefore, the trial court did not abuse its
discretion in admitting the evidence of appellant’s gang affiliation.  See Williams, 974 S.W.2d at 331.  We overrule appellant’s third issue.

B.      Improper
Evidence and Argument Rendering Trial Fundamentally Unfair

In his fourth issue, appellant contends
the improper presentation of evidence of gang affiliation rendered appellant’s
self-defense trial fundamentally unfair. 
Because we have overruled appellant’s issues concerning the admission of
gang affiliation evidence, we find no fundamental unfairness based on the admission
of the evidence and overrule appellant’s fourth issue.

C.      Improper
Jury Argument Rendering Trial Fundamentally Unfair

In his fifth and sixth issues, appellant
contends the trial court erred in refusing to declare a mistrial because of the
prosecutor’s improper jury argument, and the improper jury argument rendered
appellant’s trial fundamentally unfair. 
Appellant contends that, in addition to gang references, the prosecutor
referred to a new and unproven allegation that appellant or his associates were
somehow connected to some stabbings. 
Although the trial court sustained appellant’s objection and instructed
the jury to disregard the reference to stabbings, it declined to declare a
mistrial.  Consequently, appellant
argues, his “Due Process right to a fundamentally fair trial was destroyed by
the refusal to declare a mistrial.” 








The four general areas for proper jury
argument are (1) summation of the evidence, (2) reasonable deduction from the
evidence, (3) answer to argument of opposing counsel, and (4) plea for law
enforcement.  Wesbrook v. State,
29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc).  Argument beyond the bounds of these four
areas will not constitute reversible error unless, in light of the record as a
whole, the argument is extreme or manifestly improper, violates a mandatory
statute, or injects new facts harmful to the accused into the trial
proceeding.  Id.  The remarks must have been a willful and
calculated effort by the State to deprive an appellant of a fair and impartial
trial.  Id.  In most instances, an instruction to
disregard the remarks will cure the error. 
Id.  Only offensive or
flagrant error warrants reversal when there has been an instruction to
disregard.  Id.

The prosecutor referenced “shooting and
stabbing” in the context of a plea for law enforcement.[5]  Having reviewed the record, we find that the
trial court did not err in denying appellant’s request for mistrial.  We also find that the State’s argument was
not so offensive or flagrant that the trial was rendered fundamentally unfair.  Therefore, we overrule appellant’s fifth and
sixth issues.

IV.      Jury
Charge Issues

In issues seven through ten, appellant
contends the trial court’s charge was defective because (A) the evidence was
not factually sufficient to exclude justification by self-defense, (B) the
charge limited the applicability of self-defense based on “provoking the
difficulty,” (C) the charge limited the applicability of self-defense on verbal
provocation alone, and (D) the charge’s limit on the applicability of
self-defense on verbal provocation alone was an improper comment on the weight
of the evidence.  We address each in
turn.

A.      The
Factual Sufficiency of the Evidence Against Justification by Self-Defense 








In issue seven, appellant contends that
the evidence was insufficient to support the jury’s rejection of appellant’s self-defense
theory.  Appellant contends the jury’s
verdict was influenced by the introduction of prejudicial gang and victim
impact evidence instead of “the available legitimate evidence.”  However, appellant fails to demonstrate how
gang or victim impact evidence would sway a jury from the facts of the
case.  Additionally, we have reviewed the
evidence and find that factually sufficient evidence was presented to support
the jury’s refusal to find that appellant acted in self-defense.  

The Texas Penal Code provides that a
person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other’s use or attempted use of unlawful force.  Tex.
Penal Code § 9.31(a).  A person is
justified in using deadly force against another (1) if he would be justified in
using force against the other under section 9.31, (2) if a reasonable person in
the actor’s situation would not have retreated, and (3) when and to the degree
he reasonably believes the deadly force is immediately necessary to protect
himself against the other’s use or attempted use of unlawful deadly force.  Id. § 9.32(a)(1)–(3)(A).  When a defendant challenges the factual
sufficiency of the rejection of a defense, we review all of the evidence in a
neutral light and ask whether the State’s evidence taken alone is too weak to
support the finding and whether the proof of guilt, although adequate if taken
alone, is against the great weight and preponderance of the evidence.  Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003).  The State is not
required to affirmatively produce evidence to refute a defendant’s self‑defense
claim, but must prove its case beyond a reasonable doubt.  See Saxton v. State, 804 S.W.2d 910,
914 (Tex. Crim. App. 1991).  The issue of
self‑defense is an issue of fact to be determined by the fact finder, and
the fact finder is free to accept or reject the defensive evidence. See id. at
913.  A verdict of guilty is an implicit
finding rejecting the defendant’s self‑defense theory.  See id. at 914.








Appellant contends it is enough that the
evidence shows that he was hit hard, at close range, with a full beer can,
either in the face or back of the head, he was stunned, and he responded by
shooting the victim.  However,
appellant’s own testimony shows that he could have retreated and not initially
confronted the victim.  He testified that
he continued to drive into the Burger King parking lot even though he saw the victim’s
group in the parking lot and knew some of them did not like his companion,
Daniel Ortiz.  He also testified that
when he saw these people he “was scared something was going to happen.”  But, he did not leave the scene.  Appellant also testified that he got in a
fistfight with the victim, but began to leave when he realized that the victim
was stronger than he was.  He was then
hit with the beer can or bottle, and pulled the gun from his pants and shot in
fear for his safety.  However, there was
no evidence that the victim or anyone else in his group threatened appellant
with a gun or knife.  Thus, the evidence
showed that the deadly force appellant used was far greater than the degree of
force used against him.  Instead of
shooting the victim, appellant could have retreated to his vehicle, but he did
not.  

The State’s witnesses also controverted
appellant’s self-defense theory.  Jason
Fuentes, a member of the victim’s party, testified that at the Burger King
everyone got out of their cars and appellant and Ortiz began throwing beer cans
at them.  At some point, Ortiz passed the
gun to appellant, saying “shoot them all.” 
The victim, after being hit in the chest with a beer can, then threw a
beer can back, hitting appellant in the face. 
According to Fuentes, appellant was startled, and then he lifted up his
hand and shot the victim in the chest. 
Another member of the victim’s group, Gilbert Fuentes, also testified
that Ortiz gave appellant the gun, and appellant, after being hit in the face
with the beer can, aimed at the victim’s chest and shot.  

Applying the standards discussed above, we
find the evidence factually sufficient to support the jury’s rejection of
appellant’s defense, and overrule appellant’s seventh issue.

B.      The
Jury Charge’s Limitation on the Applicability of Self-Defense based on
“Provoking the Difficulty” 

In his eighth issue, appellant contends
the trial court erred in charging the jury on “provoking the difficulty” as a
limitation on the application of self-defense. 
Appellant contends the issue was not raised by the facts; therefore, the
charge was an unwarranted limitation on the right to self-defense and the case
should be reversed as a result.








The Texas Penal Code provides that
self-defense is not justified “if the actor provoked the other’s use or
attempted use of unlawful force” unless the actor abandons the encounter, or
clearly communicates to the other his intent to do so reasonably believing he
cannot safely abandon the encounter, and the other nevertheless continues or
attempts to use unlawful force against the actor.  See Tex.
Pen. Code § 9.31(b)(4)(A)–(B). 
The jury was charged consistently with this language.  

A charge on provocation is required when
there is sufficient evidence that (1) the defendant did some act or used some
words which provoked the attack on him, (2) such act or words were reasonably
calculated to provoke the attack, and (3) the act was done or the words were
used for the purpose and with the intent that the defendant would have a pretext
for inflicting harm upon the other.  Smith
v. State, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998) (en banc).  All of the elements are questions of
fact.  Id.  A provocation instruction should be given
only if there is evidence from which a rational trier of fact could find each
element beyond a reasonable doubt.  Id.
at 514.  On appeal, we determine if there
was sufficient evidence from which a rational jury could have found provocation
beyond a reasonable doubt, viewing the evidence in the light most favorable to
giving the instruction to determine if the instruction was warranted.  Id.

The evidence before us shows that a jury
could have found provocation beyond a reasonable doubt.  The State presented evidence that when the
victim’s group encountered appellant’s car, gang signals or gestures were
exchanged, and appellant followed them to the Burger King parking lot.  Appellant stopped his vehicle in the parking
lot, got out of the car, and both appellant and Ortiz began throwing beer cans
at the victim’s group.  At the same time,
appellant was either carrying or was given the gun used to shoot the
victim.  A rational trier of fact could
infer from this and from appellant’s subsequent conduct in the parking lot that
appellant, intending to give himself a pretext for shooting the victim, engaged
in conduct that was reasonably calculated to and did provoke an attack by the
victim.  We overrule appellant’s eighth
issue.

 

 








C.      Charging
the Jury on “Verbal Provocation Alone”

In issues nine and ten, appellant contends
the trial court erred in charging the jury on “verbal provocation alone” as a
limitation on the applicability of self-defense because it was not raised by
the evidence, and its inclusion was an improper comment on the weight of the
evidence.  According to appellant, there
was record evidence of non-verbal provocation, by throwing a full beer can, but
verbal provocation alone was not a fact at issue.

The court charged on the law of self‑defense
and further advised that “the use of force against another is not justified in
response to verbal provocation alone.”  See
Tex. Pen. Code § 9.31(b)(1).  Courts have held that this instruction does
not constitute a limitation on the self‑defense charge.  See Quintana v. State, 777 S.W.2d 474,
478 (Tex. App.—Corpus Christi 1989, pet. ref’d) (holding instruction did not
limit self-defense charge); Frescas v. State, 636 S.W.2d 516, 518 (Tex.
App.—El Paso 1982, no pet.) (noting instruction was not equivalent to a
limiting instruction concerning the accused’s actions in provoking a
difficulty); see also Gamez v. State, No. 14‑95‑00788‑CR,
1997 WL 167124, at *2 (Tex. App.—Houston [14th Dist.] April 10, 1997, pet.
ref’d) (not designated for publication) (same). 
Appellant cites no cases to the contrary. 

Additionally, we note that, while
appellant points to evidence of provocation based on the victim throwing a beer
can at him, not speaking to him, appellant’s own written statement provides
some evidence of verbal provocation. 
Appellant stated that when he saw the members of the victim’s group in
the Burger King parking lot, “[t]hey started talking bullshit and me and Daniel
started talking bullshit back.”  At
trial, appellant testified that, although he did not know what was being said,
Ortiz and the victim’s group were “communicating.”  This evidence shows that, contrary to
appellant’s assertion, some evidence of verbal provocation was presented.  Given this evidence, we cannot say the
inclusion of the instruction was error.  








Finally, under these issues, appellant
argues that by including language on verbal provocation alone, the judge
commented on the weight of the evidence. 
A trial court may not comment on the weight of the evidence in the
charge.  Tex. Code Crim. Proc. art. 36.14.  The court comments on the weight of the
evidence when its charge comments on the elements of the charged offense “or
assumes the truth of a controverted issue.” 
Kitt v. State, 875 S.W.2d 19, 20 (Tex. App.—Texarkana 1994, pet.
ref’d) (citing Whaley v. State, 717 S.W.2d 26, 32 (Tex. Crim. App.
1986); Grady v. State, 634 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.]
1982)).  In determining whether the
charge comments on the weight of the evidence, we review the “charge as a whole
rather than as a series of isolated statements.” Kitt, 875 S.W.2d at 20;
accord Whaley, 717 S.W.2d at 32; Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1985) (op. on reh’g). 
A trial judge improperly comments on the weight of the evidence if he
makes a statement that implies approval of the State’s argument, indicates any
disbelief in the defense’s position, or diminishes the credibility of the
defense’s approach to its case.  Clark
v. State, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.)

We are not convinced the inclusion of
language on verbal provocation alone amounted to a comment on the weight of the
evidence.  To begin with, the cases
appellant relies on to support his contention that the instruction constitutes
an improper comment on the evidence are inapposite.  See Zani v. State, 758 S.W.2d 233
(Tex. Crim. App. 1988) (en banc); Florio v. State, 532 S.W.2d 614 (Tex.
Crim. App. 1976).  In both of those
cases, the Court of Criminal Appeals held that the trial court properly denied
the inclusion of instructions specifically addressing a particular type of
testimony.  See Zani, 758 S.W.2d
at 245 (upholding denial of instruction directed to hypnotically-enhanced
testimony); Florio, 532 S.W.2d at 618 (upholding denial of instruction
directed to credibility and reliability of expert testimony).  In contrast, this instruction, one of several
concerning self-defense, does not single out a particular type of evidence for
special attention; it merely recites a correct statement of the law of
self-defense.  In the context of the
entire charge, the instruction does not constitute a comment on the weight of
any particular evidence.  We overrule
appellant’s ninth and tenth issues.

 








V.      The
Admission of Appellant’s Written Statement

In his eleventh issue, appellant contends
the trial court erred in admitting into evidence the statement he gave the
authorities while in their custody. 
Appellant complains that the interviewing officer who obtained his statement
testified at the suppression hearing that he did not know if appellant had
actually waived his Miranda[6]
rights before giving the statement. 
According to appellant, the officer should have questioned appellant
further to determine whether appellant actually understood and intended to
waive his right not to talk to the officer.[7]  Absent such further questioning, appellant
argues that giving the Miranda warnings was nothing more than an “empty ritual.”  We disagree.

The record of the suppression hearing
shows that appellant was read the warnings and signed a form listing his rights
as required under article 38.22, section 3(a) of the Texas Code of Criminal
Procedure.  See Tex. Code Crim. Proc. art. 38.22, §
3(a).  The form also included appellant’s
acknowledgment that he had been given his rights and that he fully understood
them.  The interviewing officer testified
that he asked appellant if he understood his rights and appellant answered that
he did.  Appellant then gave his
statement to the interviewing officer. 
The written statement repeated appellant’s rights and included the
statement that he “knowingly, intelligently and voluntarily” waived the listed
rights.  The officer testified that he
and appellant reviewed the statement and appellant indicated he understood
it.  Appellant then initialed and signed
the statement.  Nothing in the record of
the hearing indicates appellant did not knowingly, intelligently, and
voluntarily waive his rights.  We
overrule appellant’s eleventh issue.

 








VI.      Whether
the Trial Court Allowed the Prosecutor to Dilute the Meaning of “Beyond a
Reasonable Doubt”

In his twelfth issue, appellant contends
the trial court erred in permitting the State to dilute the meaning of “beyond
a reasonable doubt” in violation of his constitutional rights.  Appellant argues that the State’s
misstatement of the meaning of reasonable doubt distorted the lawful course of
the voir dire and therefore the trial court should have granted his request
that a Geesa[8]
reasonable doubt instruction be included in the charge.  Again, however, we disagree.

During voir dire, the State discussed
reasonable doubt, commenting in part that “I think it’s easier to look at it in
terms of what it’s not.  It’s not beyond
all doubt, it’s not beyond any doubt. 
It’s beyond a reasonable doubt.” 
Appellant objected to the State’s comment, arguing that the comment
alone, without a complete definition, violated his due process rights.  Later, at the charge conference, appellant
requested that the trial court include a definition of reasonable doubt, which
the trial court denied.  

In Paulson v. State, the Court of
Criminal Appeals overruled Geesa’s requirement that a definition of
reasonable doubt be included in the charge. 
28 S.W.3d 570, 573 (Tex. Crim. App. 2000).  The Court found that “the better practice”
was to give no definition of reasonable doubt at all to the jury.  Id. 
The Court also held, however, that if both the State and the defense
agree to give the Geesa instruction to the jury, it would not result in
reversible error if the trial court includes the instruction in the
charge.  Id.  








After the Paulson case, this court
considered whether a trial court erred in including in the charge an
instruction similar to the State’s voir dire statements regarding reasonable
doubt, and we held that it did not.  See
Jackson v. State, 105 S.W.3d 321, 325–26 (Tex. App.—Houston [14th Dist.]
2003, pet. ref’d).  In Jackson,
the challenged instruction read as follows: 
“It is not required that the prosecution prove guilt beyond all possible
doubt.  It is required that the
prosecutor’s proof excludes all ‘reasonable doubt’ concerning the Defendant’s
guilt.”  Id. at 325.  We rejected the appellant’s contention that
the instruction lessened the State’s burden of proof, confused the jury, or
negated the statutory burden of proof language, finding instead that the
instruction correctly stated the State’s burden of proof.  Id. at 326.  Similarly, we find no error in the
prosecutor’s statements here. 
Additionally, both the trial court and appellant’s counsel explained the
burden of proof further to assist the jury panel in understanding how to apply
it to the State’s evidence.  The trial
court discussed the various standards of proof and explained that “beyond a reasonable
doubt” is the “highest standard of proof.” 
During voir dire, appellant’s counsel also spent some time explaining
that “the highest burden under our law” was proof beyond a reasonable doubt,
and that if a juror had a reasonable doubt, he was to vote “not guilty.”  We overrule appellant’s twelfth issue.

VII.     The
Submission of Sudden Passion

In his thirteenth issue, appellant
contends that the trial court erred in the punishment phase by submitting the
instruction on sudden passion arising from adequate cause as an affirmative
defense.  According to appellant, placing
the burden of proof and persuasion on any element of a criminal offense on the
defense, including the mens rea, violates the Due Process Clause of the
United States Constitution.  Appellant
cites Ring v. Arizona, 536 U.S. 584 (2002) and Apprendi v. New Jersey,
530 U.S. 466 (2000) to argue that the Texas Legislature erroneously determined
that sudden passion arising from adequate cause is “a mere sentencing factor”
and contends that, instead, the State should be required to negate its
existence.  See Tex. Code Crim. P. 19.02(d).  








This court has already rejected a similar
challenge to the constitutionality of section 19.02(d).  See Walker v. State, No.
14-01-01197-CR, 2003 WL 21466960, at *2–3 (Tex. App.—Houston [14th Dist.] June
26, 2003, pet. ref’d) (not designated for publication), cert. denied,
125 S. Ct. 45 (2004).[9]
 We hold, therefore, that the
Constitution does not prohibit the State from putting the burden on the
defendant to prove an issue that would mitigate punishment.  We overrule appellant’s thirteenth issue.

VIII.    The
“Good Conduct Time” Instruction

In his fourteenth issue, appellant
contends the trial court erred in including an instruction about “good time”
because it was reasonably likely to produce a longer period of incarceration
than the jury intended.  He contends
that, as applied to him, the charge is unconstitutional because he was eligible
for probation, but because of prevailing fears and attitudes in the community,
a juror could reasonably be influenced to impose a longer sentence to ensure that
the defendant remains incarcerated for a sufficiently long period. 

When a defendant is found guilty of murder
and the jury is to assess punishment, the trial court is statutorily required
to include the prescribed “good conduct time” instruction in the charge.  See Tex.
Code Crim. Proc. art. 37.07, § 4(a). 
This instruction explains generally the concepts of good conduct time
and parole.  It ends with the following
admonishment to the jury:

You may consider the existence of the parole law and good
conduct time.  However, you are not to
consider the extent to which good conduct time may be awarded to or forfeited
by this particular defendant.  You
are not to consider the manner in which the parole law may be applied to this
particular defendant.

Id. (emphasis added). 








Appellant acknowledges that the Texas
Court of Criminal Appeals has held that this legislatively-mandated instruction
was not unconstitutional in Luquis v. State, 72 S.W.3d 355, 365 (Tex.
Crim. App. 2002).  Appellant argues that
his situation is distinguishable because the defendant in Luquis was not
eligible for parole or release on mandatory supervision, while appellant was
eligible for probation.  But, he does not
explain the significance of this distinction. 
Instead, he contends the instruction could confuse or mislead a juror
regarding the minimum time a defendant would serve in prison.  However, the Luquis Court found that
the instruction was not a misstatement of the law, and, considering the
instruction as a whole, also found it was “not misleading and certainly not so
misleading as to convert appellant’s trial into a fundamentally unfair
proceeding which denied him due process.” 
Id. at 366–67.  The Court
reasoned that if the jury followed the trial judge’s clear and explicit
direction not to apply the general concepts of parole or good conduct time in
assessing the appellant’s sentence, there could be no error, confusion, or
harm.  Id. at 367.  And, because the appellant made no showing
that the jury did not follow the instruction, appellant failed to show that
there was a reasonable likelihood that the jury unconstitutionally misapplied
the concept of “good conduct time” to assess a higher sentence as a result of
the instruction.  Id.  

Likewise, appellant here has made no
showing that the jury failed to follow the instruction.  Appellant instead makes a public policy
argument in which he contends that the current climate in Texas is one of fear
and concern that dangerous and undeserving felons are being prematurely
released from overcrowded prisons by the orders of “unaccountable” federal
judges, and this erosion of the public’s confidence in the administration of
criminal justice requires that we alter our assumption that juries follow their
instructions.  This argument is more
appropriately directed to the legislature, rather than this court.  On these facts, we find that the inclusion of
the required good conduct time instruction did not violate appellant’s
constitutional rights.  We overrule
appellant’s fourteenth issue.

IX.      The
Factual Sufficiency of the Evidence to Support a Sixty-Year Sentence and
Whether it is Cruel and Unusual








In his fifteenth issue, appellant contends
the evidence is insufficient to support a sixty-year sentence with thirty
calendar years before parole eligibility. 
Appellant does not explain how the evidence is factually insufficient,
he merely “urges” us to “review the evidence of the crime and his background
and record to determine whether the evidence is sufficient to support the
sentence under Jackson v. Virginia.” 
We have detailed the evidence above, and we find it sufficient to
support the sentence.

In his sixteenth issue, appellant contends
the sentence imposed amounts to cruel and unusual punishment.  Appellant recognizes that his failure to
object on this ground ordinarily waives his right to complain on appeal, see
Tex. R. App. P. 33.1; Curry
v. State, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding that
appellant waived point of error concerning cruel and unusual punishment by
failing to object at trial), but argues that we should “make a thorough review
of the lengthy record of the facts and circumstances of the case” to (1) determine
whether the sentence should be reduced, (2) determine whether the failure to
lodge this complaint at the motion for new trial stage ought to be excused by
reason of the lack of the evidentiary record to review for that purpose, and
(3) determine whether trial and/or appellate counsel were ineffective in
failing to raise this issue at the motion for new trial stage.[10]  Appellant does not cite us to any parts of
the record he claims support his argument, nor does he explain why we should
depart from the Court of Criminal Appeals’ oft-cited admonition that when
ineffectiveness is claimed, the proper procedural vehicle to attack ineffectiveness
is a post-trial writ of habeas corpus.  See
Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003) (en banc).








In any event, we note that the sentence
was within the statutory guidelines. 
“When punishment assessed by a judge or jury is within the statutory
limits, it is not cruel and unusual within the constitutional
prohibitions.”  Benjamin v. State,
874 S.W.2d 132, 135 (Tex. App.—Houston [14th Dist.] 1994, no pet.).  Appellant was convicted of murder, a
first-degree felony that carries with it a penalty between five and ninety-nine
years’ imprisonment.  Tex. Pen. Code § 12.32(a).  Appellant’s sentence of 60 years’
imprisonment was well within the limit. 
We overrule appellant’s fifteenth and sixteenth issues.

CONCLUSION

The judgment of the trial court is
affirmed.

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Memorandum Opinion filed February 15, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.

Do
Not Publish — Tex. R. App. P.
47.2(b).











[1]  Brady v.
Maryland, 373 U.S. 83 (1963).





[2]  These factors
included the following: (1) the witnesses which were of the victim’s party were
unreliable; (2) Daniel Ortiz was in a position to give testimony from the same
or similar standpoint as appellant but did not testify; (3) the State’s case
that appellant did not act in self-defense because he “provoked the difficulty”
relied heavily on the biased, intoxicated members of the victim’s party; (4)
appellant testified at trial that Ortiz, not he, had thrown a beer can at
members of the victim’s party, perhaps provoking them; and (5) the State
exposed perceived weakness in its direct evidence of unjustified murder when it
took the extraordinary risk of presenting victim impact and gang affiliation
evidence in the guilt phase of the trial. 






[3]  We have
reviewed the documents and they show the following.  Ortiz pleaded guilty to first degree murder
and, on April 9, 2003, was sentenced to twenty years’ imprisonment in the Texas
Department of Criminal Justice-Institutional Division.  Ortiz’s Guilty Plea Memorandum and Written
Stipulations and Waivers were entered November 4, 2002, the same day as
appellant’s hearing on his request for in camera review of undisclosed Brady
materials.  Appellant postulates that, in
exchange for a sentence of no more than twenty years and other possible
consideration, Ortiz agreed to refrain from cooperating with appellant’s
defense, thus leaving the jury with the impression that appellant, rather than
Ortiz, provoked the dispute.  However, according to the Judgment and
Sentence on Plea of Guilty or Nolo Contendere, the trial court determined there
was no plea bargaining agreement between the parties, and appellant offers no
evidence of such an agreement. 





[4]  Appellant
cites Macias v. State, 959 S.W.2d 332 (Tex. App.—Houston [14th Dist.]
1997, pet. ref’d), as support for his contention that gang affiliation evidence
is not admissible under Rule 404(b). 
However, in that case, the court found that the appellant’s gang
affiliation was only an incidental aspect of appellant’s life; it was not part
of the reason for the murder or part of the explanation for why the murder
occurred as it did.  Id. at
339.  Here, as we have discussed, the
State’s theory relied on gang affiliation to demonstrate a motive for appellant
to intentionally kill, and appellant’s self-defense theory also relied on
knowledge of gang activity that placed appellant in fear for his safety.  Macias is therefore distinguishable.





[5]  In his
argument, the prosecutor stated, “What y’all need to understand is the only way
those people out there will get the message that gang membership and gang
activities and the killing of people and the injury to people, the shooting and
the stabbing will stop.”





[6]  Miranda v.
Arizona, 384 U.S. 436 (1966). 





[7]  Among the
questions appellant contends the officer should have asked were “what Appellant
thought would happen if he stopped talking after giving the officer some
information,” “when, and under what circumstances he would get to talk with a
lawyer if he said he wanted one right then,” and “whether he thought he had the
right to talk with a lawyer who was working on his behalf before he told the
officer anything more.”





[8]  Geesa v.
State, 820 S.W.2d 154 (Tex. Crim. App. 1991).





[9]  The
instruction given to the jury involved a fact that would mitigate, not enhance,
punishment.  Ring and Apprendi
address facts that would increase punishment. 
See Ring, 536 U.S. at 600; Apprendi, 530 U.S. at 492.  Neither Ring nor Apprendi speaks to which
party should bear the burden of proof or persuasion as to mitigating evidence;
those cases focus on whether the trial court or the jury should be the fact
finder for sentence enhancement.  





[10]  Appellant also asks that we abate
the appeal and remand the case to the trial court to conduct a hearing to
determine whether the sentence is cruel and unusual in violation of
constitutional guarantees, citing Alvarez v. State, 79 S.W.3d 679 (Tex.
App.—Houston [1st Dist.] 2002, pet. dism’d) (abating appeal and remanding for
motion for new trial when record did not show that defendant knowingly,
intelligently, and voluntarily waived his right to conflict-free
representation).  However, because we
find the evidence is factually sufficient and
the sentence is within the statutory guidelines, we decline appellant’s
request.